**NOT FOR PUBLICATION**

In the

United States Court of Appeals

For the Eleventh Circuit

————————————

No. 24-13673

Non-Argument Calendar

————————————

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*versus*

SANTINO DEMARCO PARKS,

a.k.a. Santino Parks,

*Defendant-Appellant.*

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cr-00401-MHC-CCB-4

————————————

Before JORDAN, JILL PRYOR, and KIDD, Circuit Judges.

PER CURIAM:

Santino Parks appeals his 84-month sentence of imprisonment for his involvement in an attempted jewelry store robbery.

He challenges the district court's calculation of his advisory guideline range and the substantive reasonableness of his sentence. After careful review, we affirm.

## I. BACKGROUND

Parks was recruited to act as a getaway driver by a group planning to rob an Atlanta, Georgia, jewelry store. But through a wiretap of the contraband cell phone used by a Georgia inmate to orchestrate the scheme, the Federal Bureau of Investigation ("FBI") learned the details of the group's plan and stopped the robbery before it began. Specifically, on the date of the robbery, FBI agents stationed themselves at the targeted jewelry store, intercepted the phone call giving the "green light" to initiate the plan, and arrested Parks and some of his co-conspirators before they exited their rented getaway car. Agents searched the car and found trash bags, two sledgehammers, and two loaded handguns, one of which had an extended magazine.

Parks and three of his co-conspirators were named in a six-count indictment. Parks was charged with (1) conspiracy to commit Hobbs Act robbery, 18 U.S.C. § 1951(a) (Count 1); (2) conspiracy to use firearms during a crime of violence, 18 U.S.C. § 924(o) (Count 2); (3) attempted Hobbs Act robbery, 18 U.S.C. §§ 1951(a) and 2 (Count 3); and (4) possession of a firearm by a convicted felon, 18 U.S.C. § 922(g)(1) (Count 6). The government dismissed Count 2, and Parks pleaded guilty to Counts 1, 3, and 6 without a written plea agreement.

Parks's amended presentence investigation report ("PSI") grouped together Counts 1 and 3, and, because this grouping provided a higher adjusted offense level than Count 6, it controlled Parks's guideline calculation. United States Sentencing Guidelines Manual §§ 3D1.2(c), 3D1.3(a) (Nov. 2023). For this count group, the PSI provided a base offense level of 20, *id.* § 2B3.1(a), but applied a 5-level enhancement because Parks possessed firearms, *id.* § 2B3.1(b)(2)(C), and a 2-level enhancement because the intended loss amount exceeded $95,000, *id.* § 2B3.1(b)(7)(C). The PSI further applied a 2-level reduction for acceptance of responsibility, *id.* § 3E1.1(a), and a 1-level reduction because Parks timely notified the government of his intention to plead guilty, *id.* § 3E1.1(b). Parks's total offense level was 24. The PSI also placed Parks in a criminal history category of VI based upon the 14 criminal history points calculated. With a total offense level of 24 and a criminal history category of VI, the PSI provided an advisory guideline range of 100-125 months of imprisonment.

Parks objected, as relevant here, to the PSI's failure to apply an adjustment pursuant to U.S.S.G. § 3B1.2(b), which provides for a two-level reduction to a defendant's offense level if they were "a minor participant in" the offense. He also submitted a memorandum requesting a sentence of no more than 63 months of imprisonment.

At sentencing, the district court overruled Parks's objection to the minor-role reduction based, in part, on the factors outlined in the commentary to § 3B1.2. The court concluded that "bottom

line . . . [Parks] knew exactly what was going to happen," because, among other things, he received instructions before the robbery, planned to share in the proceeds, and "knew that weapons were going to be used." The district court then adopted the PSI's guideline calculation, allowed the parties to advocate for their proposed sentences, and sentenced Parks to 84 months of imprisonment on each count, to be served concurrently, with 3 years of supervised release to follow.

The court went through the 18 U.S.C. § 3553(a) factors to "indicate why" Parks's sentence was "fair and reasonable . . . but not greater than necessary." First, it explained that this "awful offense . . . had the potential of being an absolute disaster," given that the jewelry store was targeted during business hours and "serious weapons" were going to be used, so it was fortunate that no one was "shot and killed." Second, the court recognized that Parks "did not have a great life growing up and . . . got into trouble at a very young age." However, the court found it troubling that Parks "really had an opportunity to stop" his criminal behavior but chose to return to crime despite serving a "significant" state sentence. It also recognized that Parks likely got involved in the robbery scheme to provide for his family but found that money did not justify threatening innocent people's lives.

The court further explained that it crafted Parks's sentence based upon the parties' recommendation "of going down one criminal history level" as well as an "additional downward variance" based on Parks's history "before [he] got into [criminal] trouble"

and his family support. However, the court explained that Parks had "to serve a serious sentence for [his] serious crime," and it urged Parks to use this time to make a "permanent life" change to be there for his children in the future. The court further noted that its decision to impose this "below-guideline sentence" was based on other factors, including "the need to avoid disparity," and re-marked that Parks's sentence was "fair . . . compar[ed] . . . to other codefendants" and "along the same lines" to "other sentences" the court had imposed "for similar charges."

The government then inquired "if the [c]ourt would have imposed" the same sentence "even if it had sustained [Parks's] [guideline] objection." The district court responded in the affirma-tive and explained that even if Parks had received the "two-level [minor role] reduction, [they] would be right where [the sentence] ended up anyway," which, the court remarked, was "probably" the answer the government wanted. Parks, in turn, maintained his challenge to the minor-role reduction and objected to the substan-tive reasonableness of his sentence. He now appeals.

## II. STANDARD OF REVIEW

We review the district court's determination of a defend-ant's role in an offense for clear error. *United States v. De Varon*, 175 F.3d 930, 937 (11th Cir. 1999) (en banc). When reviewing a sen-tence for substantive reasonableness, we consider the totality of the circumstances under a deferential abuse-of-discretion standard. *Gall v. United States*, 552 U.S. 38, 51 (2007).

### III. DISCUSSION

On appeal, Parks first argues that the district court clearly erred in its consideration of the factors outlined in the commentary of U.S.S.G. § 3B1.2 in denying him the minor-role reduction. But we need not consider this argument because, even if Parks is correct that the district court erred in calculating his guideline range, such an error was harmless, as it "did not affect the district court's selection of the sentence imposed." *Williams v. United States*, 503 U.S. 193, 203 (1992).

To know whether an error "was truly harmless," we first must know whether "the district court would have reached the same result even if it had decided the guidelines issue the other way." *United States v. Keene*, 470 F.3d 1347, 1349 (11th Cir. 2006). We then must determine whether the ultimate sentence "would be reasonable even if the guidelines issue had been decided in [Parks's] favor." *Id.*

Here, the district court explicitly stated that Parks's 84-month sentence, which was below his guideline range, would have been the same regardless of the court's rulings on his guideline objection. *Id.* It is inconsequential that the government's inquiry prompted the court to make this finding. *See United States v. Grushko*, 50 F.4th 1, 19 n.7 (11th Cir. 2022) (reviewing for harmless error where "the government expressly invoked *Keene* and asked the district court to clearly indicate that it would have imposed the same sentence, regardless of whether the court had decided in the defendant's favor for any sort of sentencing enhancement so long

as that sentence was reasonable" (citation modified)). If the court had sustained Parks's objection to the minor-role reduction, his offense level would have been lowered by 2 levels to 22, resulting in a guideline range of 84-105 months. Parks must show that his 84-month sentence was unreasonable under this lower guideline range, and he fails to meet that burden. *Keene*, 470 F.3d at 1350.

As to the substantive reasonableness of his sentence, Parks argues that the district court failed to adequately consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," as set out in 18 U.S.C. § 3553(a)(6). Parks's argument is belied by the record. The district court specifically noted its consideration of this factor, facilitated a discussion of how the codefendants' sentences should impact Parks, and found that Parks's 84-month imprisonment term was "fair" and was comparable to both his codefendants and similarly situated federal defendants.

Parks points to the 63-month sentences received by his codefendants Asbury and Mark Oliver. He contends that Asbury and Oliver each had greater roles in the conspiracy, so his receipt of a higher sentence was unjustified.

But "there can be no 'unwarranted' sentencing disparities among codefendants who are not similarly situated." *United States v. Azmat*, 805 F.3d 1018, 1048 (11th Cir. 2015) (citing *United States v. Docampo*, 573 F.3d 1091, 1101 (11th Cir. 2009)). For instance, Parks entered an open guilty plea to Counts 1, 3, and 6, while Asbury and Oliver agreed to plead guilty to Count 3 in exchange for the

government's dismissal of their remaining charges. *See id.* ("Defendants convicted of more crimes or more serious offenses naturally receive longer prison sentences than those who ple[aded] guilty to fewer or lesser crimes."). Further, as the district court recognized at sentencing, Asbury's criminal history category was only III, while Parks's 14 criminal history points placed him in category VI. Parks's disparity arguments must fail because he is simply not comparing "apples to apples." *Docampo*, 573 F.3d at 1101 (citation modified); *see also United States v. Cavallo*, 790 F.3d 1202, 1237 (11th Cir. 2015) ("We have stated that disparity between the sentences imposed on codefendants is generally not an appropriate basis for relief on appeal." (citation modified)).

The record likewise does not indicate that the district court abused its discretion by failing to consider relevant factors due significant weight, by giving significant weight to an improper or irrelevant factor, or by committing a clear error of judgment in considering the proper factors. *United States v. Irey*, 612 F.3d 1160, 1189–90 (11th Cir. 2010) (en banc). Instead, the district court carefully considered the relevant § 3553(a) factors and thoroughly explained its decision to vary downward from Parks's calculated guideline range to account for the mitigating circumstances he presented, including his difficult childhood and family obligations. *See id.*; *see also United States v. Rosales-Bruno*, 789 F.3d 1249, 1254 (11th Cir. 2015) ("The decision about how much weight to assign a particular sentencing factor is committed to the sound discretion of the district court." (citation modified)).

Finally, Parks's 84-month sentence falls within the hypothetical lower guideline range of 84-105 months imprisonment, and it is significantly below the cumulative statutory maximum of 55 years, which is further indicative of reasonableness. 18 U.S.C. §§ 1951(a), 924(a)(8); *see United States v. Muho*, 978 F.3d 1212, 1227 (11th Cir. 2020) ("[S]entences that fall within the Guidelines range or that are below the statutory maximum are generally reasonable."). The same would be true if we placed Parks in criminal history category V, as the district court did below through a variance, and further decreased his hypothetical guideline range to 77-96 months. *Muho*, 978 F.3d at 1227.

Accordingly, we conclude that the district court did not commit reversible error in declining to impose the minor-role reduction and acted within its discretion when imposing Parks's 84-month sentence.

## IV. CONCLUSION

We **AFFIRM** Parks's sentence.